# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL M. MOFFETT**,

    Plaintiff,

  v.                                          Case No. 18-CV-1873

**SCOTT M. ECKSTEIN,**
**JEANNE G. ZWIERS,**
**JEAN LUTSEY,**
**SHANE GARLAND,**
**ALLEN DEGROOT,**
**L. ALSUM,**
**BRAD HOMPE,**
**SUSAN PETERS, and**
**CRIS O'DONNELL,**

    Defendants.

## SCREENING ORDER

Michael M. Moffett, a Wisconsin state prisoner who is representing himself, filed a complaint alleging that his civil rights were violated. Not all parties have had the opportunity to consent to magistrate judge jurisdiction under 28 U.S.C. § 636(c). Nonetheless, the court has jurisdiction to screen Moffett's complaint under the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

**1. Motion for Leave to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act applies to this case because Moffett was incarcerated when he filed his complaint. That law gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. § 1915. One of those requirements is that the prisoner pay an initial partial filing fee. On December 7, 2018, the court ordered Moffett to pay an initial partial filing fee of $13.33. (ECF No. 6.) Moffett paid the fee on December 26, 2018. Accordingly, the court will grant his motion for leave to proceed without prepayment of the full filing fee. Moffett will be required to pay the remainder of the filing fee over time in the manner described at the end of this order.

**2. Screening of the Complaint**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon her by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give a plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

*2.1. Allegations in the Complaint*

Moffett alleges that he suffers from complications associated with enlarged tonsils, blockage of his upper airway (sinus congestion), and sleep apnea. After completing a sleep study, he was provided with a CPAP machine. A couple of months after receiving the CPAP machine, defendant nurse Shane Garland informed Moffett that he was in poor compliance with the CPAP machine's usage because he was not using it as frequently as he should. Moffett allegedly told Garland that his sinus congestion prevented him from using the CPAP machine more often. According to Moffett, Garland prescribed allergy tablets and nasal spray.

About a month later, on July 11, 2017, defendant nurse practitioner Susan Peters saw Moffett in response to his complaints of sinus congestion. She noted that

he was not using the CPAP machine as often as he should. He again explained that he was congested and unable to breathe while using the CPAP machine. She prescribed medication and encouraged him to use the CPAP machine even if he was congested. She scheduled a follow-up appointment in eight weeks.

Two weeks later, Garland talked to Moffett about his non-compliance with the usage requirements of the CPAP machine. Moffett again talked about his congestion. Moffet had an appointment with Peters on August 28, 2017. They talked about Moffet's congestion, and she prescribed nasal spray to be used prior to using the CPAP machine. About three weeks later, on September 15, 2017, Garland discontinued the CPAP machine because Moffett was not using it as often as he should.

On October 4, 2017, Moffett submitted a health service request; he was seen by a nurse about five days later. Moffett explained to her that he was suffering from sleep apnea following the discontinuation of the CPAP machine. The nurse scheduled Moffett to see Peters.

On November 1, 2017, Moffett informed Peters that he was not intentionally not using the CPAP machine. He explained that his congestion made it hard for him to breathe. He also explained that, when he could use the CPAP machine, it helped his sleep apnea. Peters reinstated the CPAP machine for a three-month trial. She also prescribed Mucinex in an effort to relieve Moffett's sinus congestion. Moffett requested surgery to address his sinus congestion. According to Moffett, Peters told

him that, even if surgery were necessary for his condition, the health services department would not approve it because it would be too expensive.

Nearly four months later, on February 19, 2018, Garland again discontinued Moffett's CPAP machine because he was not using it as often as required. Moffett again explained that he could not use it as often as required because of his sinus congestion. According to Moffett, Garland told him that he may need surgery. Moffett asserts that he told Garland that Peters told him that he could not get surgery because it was too expensive. Garland allegedly told Moffet that Peters was wrong and that the health services department provides all needed surgeries. Garland allegedly spoke to Peters about her statements to Moffett, but he did not inform Moffett of Peters' response.

On May 30, 2018, Moffett allegedly confronted Peters at a follow-up exam. He asserts that he told her that he was filing a civil lawsuit based on her false assertion that he could not get necessary surgery because it was too expensive. About a month later, Moffett contacted defendant Jean Lutsey about his interaction with Peters. Moffett explains that Lutsey responded to his letter, but she failed to address the issue of Peters lying to him. Moffett wrote Lutsey a second letter, but she did not respond.

Moffett explains that, after Lutsey failed to respond to his second letter, he filed an inmate complaint. According to Moffett, inmate complaint examiner Allen DeGroot failed to acknowledge the issue of Peters allegedly lying to Moffett about the availability of surgery and instead misconstrued his complaint as a disagreement

over medical care. DeGroot recommended the complaint be dismissed; defendant L. Alsum agreed with the recommendation and dismissed the complaint. Moffett appealed the dismissal, and defendant Brad Hompe (the Corrections Complaint Examiner) recommended the appeal be dismissed. Defendant C. O'Donnell dismissed the appeal on August 29, 2018.

*2.2 Analysis*

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). *Id*.

The court will allow Moffett to proceed on a deliberate-indifference claim against Garland in his personal capacity based on his allegations that Garland discontinued his CPAP machine despite Moffett's explanations that his non-compliance with the usage requirements was a result of his persistent congestion. The court also will allow Moffett to proceed on a deliberate-indifference claim against Peters in her personal capacity based on his allegations that she refused to consider surgery to address Moffett's congestion because surgery would cost too much.

Given the court's obligation to construe a *pro se* plaintiff's allegations broadly, the court will also allow Moffett to proceed on a deliberate-indifference claim against Lutsey in her personal capacity. According to Moffett, he wrote to Lutsey to inform

6

her that Peters had told him he could not have surgery because it was too expensive. Lutsey responded to Moffett, noting that ". . . all <u>necessary</u> types of surgery are provided. ACP determines necessity and if an offsite specialist appt is necessary. You may not agree with the plan of care, but that does not mean it is not proper or adequate care." (ECF No. 1-1 at 9.) As Moffett alleges, this is a non-response insofar as it fails to indicate whether Lutsey investigated whether Peters had determined based on her medical judgment that surgery was unnecessary or whether Peters refused to consider surgery merely because it was too expensive. Further development of the record is required to determine the basis for Peters' refusal to consider surgery.

The court will not, however, allow Moffett to proceed against the remaining defendants. In his recommendation that Moffet's inmate complaint be dismissed, DeGroot notes that he spoke with Lutsey and she told him that Moffett was being treated by Peters. She also told DeGroot that the CPAP machine was discontinued due to noncompliance and that "[t]here isn't anything that requires surgery." (ECF No, 1-1 at 1.) DeGroot, after investigating Moffett's complaint, was entitled to rely on what he understood to be the medical judgment of Moffett's health care provider. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005). To be clear, Lutsey's response to Moffett suggests that she may not have investigated Moffett's complaint, while DeGroot's decision demonstrates that he did investigate Moffett's complaint. Because DeGroot did his job, he cannot be said to have been deliberately indifferent to the risk of harm faced by Moffett.

His allegations against Alsum, Hompe, and O'Donnell, who were allegedly involved in reviewing DeGroot's dismissal recommendation also fail to state a claim. Moffett's allegations do not indicate that they shirked their duties in any way or failed to appropriately handle Moffett's appeal. *Id.* at 657.

Moffett also fails to state claims against Eckstein and Zwiers. He appears to name them as defendants based on their roles as supervisors. This is not enough to state a claim. Under § 1983, a plaintiff cannot use *respondeat superior* to hold a supervisor liable for the misconduct of his or her subordinates. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

**IT IS THEREFORE ORDERED** that Moffett's motion for leave to proceed without prepayment of the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Scott Eckstein, Jeanne Zwiers, Allen DeGroot, L. Alsum, Brad Hompe, and Cris O'Donnell are **DISMISSED**.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Moffett's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendants Jean Lutsey, Shane Garland, and Susan Peters.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Jean Lutsey, Shane Garland, and Susan Peters shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Moffett shall collect from his institution trust account the $336.67 balance of the filing fee by collecting monthly payments from Moffett's prison trust account in an amount equal to 20% of the preceding month's income credited to Moffett's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Moffett is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Moffett's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Moffett is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Moffett shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[1] If Moffett is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court further advises Moffett that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 8th day of January, 2019.

BY THE COURT:

s/Nancy Joseph
NANCY JOSEPH
United States Magistrate Judge