UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL M. MOFFETT,

    Plaintiff,

    v.    Case No. 18-C-1873

JEAN LUTSEY, et al.,

    Defendants.

## DECISION AND ORDER

Pro se plaintiff Michael Moffett, an inmate at Green Bay Correctional Institution, commenced this action on November 28, 2018, against Defendants Jean Lutsey, Shane Garland, and Susan Peters. The court screened Moffett's complaint on January 8, 2019, and allowed him to proceed on a deliberate indifference claim against Garland based on his allegations that Garland discontinued his CPAP machine, a deliberate indifference claim against Peters based on his allegations that she refused to consider surgery to address his sinus congestion, and a deliberate indifference claim against Lutsey based on his allegations that she failed to investigate whether surgery was necessary.

On September 19, 2019, Moffett filed a motion to compel. On October 1, 2019, Defendants Shane Garland and Jean Lutsey filed a motion for summary judgment, and on October 9, 2019, Defendant Peters filed her motion for summary judgment. Each motion contained the required warnings to Moffett regarding when his response was due, and the rules governing how the response was to be made. On October 8, 2019, Moffett filed a motion for an extension of time to file his own motion for summary judgment in response to Defendants Garland and Lutsey's motion

for summary judgment. He subsequently filed his own motion for summary judgment on October 29, 2019. Two days later, on October 31, 2019, Defendant Peters filed a motion to strike Moffett's untimely motion for summary judgment. For the following reasons, Moffett's motion to compel will be denied, his motion for an extension of time to file a motion for summary judgment will be granted, Defendant Peters' motion to strike will be denied, Defendants Garland and Lutsey's motion for summary judgment will be granted, Defendant Peters' motion for summary judgment will be granted, Moffett's motion for summary judgment will be denied, and the case will be dismissed.

## PRELIMINARY MATTERS

On September 19, 2019, Moffett filed a motion to compel containing conclusory allegations that the defendants only responded to his discovery requests in part. Moffett's motion will be denied because he has not substantiated his allegations or explained how the defendants failed to adequately respond to his discovery requests. Moreover, Moffett failed to comply with the Local Rules regarding the filing of such motions. In particular, Moffett's motion does not comply with Civil L.R. 37, which requires a good faith effort to obtain the discovery without court action. Accordingly, Moffett's motion to compel is denied.

On October 8, 2019, Moffett filed a motion for an extension of time requesting to file his own motion for summary judgment in response to Defendants Garland and Lutsey's motion for summary judgment. Rather than respond to Garland and Lutsey's motion for summary judgment, Moffett filed his own motion for summary judgment on October 29, 2019. Defendant Peters subsequently filed a motion to strike Moffett's motion on October 31, 2019. Although Moffett's motion is filed as a motion for summary judgment, it is more accurately a response to Garland and Lutsey's motion for summary judgment, and the court will treat it as such. Accordingly, Moffett's

2

motion for an extension of time will be granted and Defendant Peters' motion to strike will be denied. The court will now address the parties' motions for summary judgment.

## BACKGROUND

Moffett was at all times relevant an inmate at Green Bay Correctional Institution. Def. Peters' Proposed Findings of Fact (DPPFOF) ¶ 1, Dkt. No. 49. Moffett was diagnosed with obstructive sleep apnea in April 2017, and Advanced Practice Nurse Prescriber Peters and Registered Nurse Garland prescribed a CPAP machine on or about April 8, 2017. *Id.* ¶¶ 8–9. A few months after Moffett received the CPAP machine, he stopped using it regularly. *Id.* ¶ 10.

On July 11, 2017, Nurse Peters saw Moffett because he was not using the CPAP machine as often as he should in compliance with the Department of Corrections Guidelines. *Id.* At this meeting, Moffett told Nurse Peters that he suffered from congestion issues caused by seasonal allergies, which prevented him from using the CPAP machine and that he was not able to breathe with the CPAP mask on. *Id.* ¶11. Nurse Peters then prescribed Cetirizine 10 milligrams daily to address the issue and instructed him on CPAP use. *Id.* ¶ 13.

Once again, Moffett stopped regularly using the CPAP machine. As a result, he was not meeting the 75% compliance requirement contained in the CPAP use guidelines. *Id.* ¶ 14. On August 28, 2017, Moffett met with Nurse Peters to discuss his noncompliance. *Id.* Again, Moffett reported that he could not comply with the CPAP guidelines because his congestion issues made it difficult to breathe when wearing the CPAP mask. Nurse Peters then prescribed nasal saline spray for Moffett to use before putting the CPAP mask on. *Id.* ¶ 15.

On September 12, 2017, Nurse Garland discontinued the CPAP machine because Moffett was not complying with the usage requirements. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, Dkt. No. 55. On September 19, 2017, Moffett attempted to file an Inmate Complaint concerning

the discontinuation of the CPAP machine. *Id.* ¶ 2. Inmate Complaint Examiner Diana Longsine received the complaint and responded to it the following day, instructing him to resolve the issue by contacting Health Services Unit Manager (HSM) Jean Lutsey. *Id.* On September 21, 2017, Moffett wrote a letter to HSM Lutsey concerning the discontinuation of the CPAP machine. *Id.* ¶ 3. HSM Lutsey responded to the letter the next day stating, "Mr. Moffett, HSU has attempted allergy meds. CPAP is not effective if you do not or cannot use it." Dkt. No. 53-1 at 5.

Nurse Peters saw Moffett on November 1, 2017, for his complaints of nocturnal awakening and nasal congestion. DPPFOF ¶ 17. She reinstated Moffett's use of the CPAP machine for three months and advised that noncompliance would result in CPAP discontinuation. *Id.* ¶ 18. To help relieve his sinus congestion, Nurse Peters prescribed Guaifenesin 600 milligrams twice daily as needed as well as Fluticasone. *Id.* ¶¶ 19–20. According to Moffett, he requested surgery to address his sinus congestion, but Nurse Peters told him that, even if surgery were necessary for his condition, the health services department would not approve it because it would be too expensive. PPFOF ¶ 7. Nurse Peters contends that she never spoke to Moffett about surgery to treat his sinus complaints. DPPFOF ¶ 4.

On November 22, 2017, Moffett stopped taking the prescribed Guaifenesin. *Id.* ¶ 21. From January 21 to 23, 2018, Moffett was seen in the Health Services Unit for influenza. *Id.* ¶ 22. On February 14, 2018, the CPAP machine was again discontinued due to noncompliance. *Id.* ¶ 23. Moffett's Fluticasone was discontinued on April 24, 2018, because he declined to use it. *Id.* ¶ 24.

On May 30, 2018, Nurse Peters saw Moffett to discuss a plan of care for his chronic nasal congestion after several failed medication treatment plans. *Id.* ¶ 25. Nurse Peters replaced the nasal spray that Moffett was not using and prescribed a Neti pot and saline flush to address the chronic nasal congestion. *Id.* ¶ 26. Moffett also trialed Loratadine, Guaifenesin, Cetirizine, and Fluticasone

4

to address his complaints. *Id.* ¶ 27. Nurse Peters made multiple attempts to adjust Moffett's medication plan of care and respiratory equipment to facilitate restful sleep and decrease nasal congestion symptoms. *Id.* ¶ 28.

On June 4, 2018, Moffett wrote a letter to HSM Lutsey concerning Nurse Peters' denial of surgery. Defs.' Proposed Findings of Fact (DPFOF) ¶ 4, Dkt. No. 39. Lutsey responded on June 6, 2018, stating: "As RN Garland told you all <u>necessary</u> types of surgery are provided. ACP determines necessity & if an offsite specialist appt. is necessary. You may not agree with the plan of care, but that does not mean it is not proper or adequate care." *Id.*

On June 7, 2018, Nurse Peters discontinued the CPAP machine. *Id.* ¶ 2. On July 6, 2018, Moffett filed Inmate Complaint GBCI-2018-14552 regarding the discontinuation of the CPAP machine. *Id.* The complaint also indicated that Nurse Peters had denied him sinus surgery and that HSM Lutsey had failed to intervene. *Id.*

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered

5

against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Failure to Exhaust Administrative Remedies

Defendant Nurse Garland asserts that this case should be dismissed because Moffett failed to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA) provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(1); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). A plaintiff's failure to properly exhaust each step of the process constitutes a failure to exhaust available administrative remedies. *Id.* The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 526, 532 (2002). The purpose of § 1997e(a) is to "permit the prison's administrative process to run its course before litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Wisconsin has implemented the Inmate Complaint Review System (ICRS) under which inmate grievances concerning prison conditions or the actions of prison officials are "expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Under the ICRS, an inmate

6

must file a complaint with the institutional complaint examiner (ICE) within 14 calendar days after the events giving rise to the complaint occur, unless good cause exists to excuse a delay. *Id.* § DOC 310.07(2). The ICE has the authority to return, investigate, or reject the complaint. *Id.* § DOC 310.10. The inmate may appeal the rejection of the complaint to the appropriate reviewing authority within 10 calendar days. *Id.* § DOC 310.10(10). The reviewing authority shall make a decision within 15 days following receipt of the recommendation or appeal of a rejected complaint. *Id.* § DOC 310.11(1). The reviewing authority's decision is final. An inmate may appeal the reviewing authority's decision within 14 days after the date of the decision by filing a typed or legibly printed request for review with the corrections complaint examiner (CCE). *Id.* § DOC 310.12(1). After reviewing an appeal, the CCE recommends a decision to the DOC Secretary, who adopts or rejects the recommendation. *Id.* §§ DOC 310.12; DOC 310.13. The failure to properly exhaust each step of the grievance process before filing a lawsuit constitutes a failure to exhaust administrative remedies. *Pozo*, 286 F.3d at 1025.

In this case, Moffett failed to exhaust administrative remedies before filing a lawsuit against Nurse Garland because he never filed an inmate complaint against him. DPFOF ¶ 3. Moffett does not dispute that inmate complaint GBCI-2018-14552, the only grievance relevant to this action, did not include a complaint against Nurse Garland. Moffett did not complete the grievance process as required by § 1997e(a) with respect to his claims against Nurse Garland. Therefore, the court will grant Nurse Garland's motion for summary judgment and dismiss the claims against him.

## B. Deliberate Indifference Claims

Moffett asserts that Nurse Peters and HSM Lutsey were deliberately indifferent to his serious medical needs. The Eighth Amendment prohibits "cruel and unusual punishments." U.S.

7

Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. To prove a claim of deliberate indifference, the plaintiff must "establish that [he] suffered from 'an objectively serious medical condition' and that the 'defendant was subjectively deliberately indifferent to that condition.'" *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)).

As an initial matter, Nurse Peters asserts that Moffett has failed to establish the existence of a serious medical need. What constitutes a sufficiently "serious medical need" is "far from self-defining." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). A condition may be sufficiently serious where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain" or where the injury is one that "a reasonable doctor or patient would find important and worthy of comment or treatment." *Id.* "It is clear that the Supreme Court contemplated that medical conditions far less critical than 'life threatening' would be encompassed by the term." *Id.* Seventh Circuit cases "demonstrate a broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn, and vomiting, a broken wrist, and minor burns sustained from lying in vomit." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011)). Even if the court assumes Moffett has

8

a serious medical condition, Moffett must demonstrate that the defendants were deliberately indifferent to his medical needs.

Deliberate indifference requires more than negligence or even gross negligence; it requires that officials knew of, yet disregarded, an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 835, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *See Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (citation omitted). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted).

Moffett claims that Nurse Peters was deliberately indifferent to his serious medical needs because she discontinued his CPAP machine and refused to consider surgery for his sinus congestion due to cost. "[D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). Nurse Peters discontinued Moffett's use of the CPAP machine based on Moffett's noncompliance after numerous warnings that it would be discontinued if he did not comply with the Department of Corrections' 75% usage requirement. Although Moffett claims that he could not comply with the usage requirement because his sinus congestion made it difficult to breathe while wearing the mask, it was not unreasonable for Nurse Peters to discontinue the CPAP machine when the Department of Corrections' policy requires that CPAP machines be discontinued when the inmate is not using the machine properly. In addition, it is not clear what, if any, injuries Moffett suffered from the discontinuation of the CPAP machine.

9

In short, Nurse Peters' discontinuation of the CPAP machine does not constitute deliberate indifference.

Moffett also asserts that Nurse Peters was deliberately indifferent to his serious medical needs because she refused to recommend surgery for his sinus congestion due to its cost. Nurse Peters' responses to Moffett's complaints of sinus congestion were reasonable and appropriate. Nurse Peters assessed Moffett at a number of appointments and prescribed Cetirizine, Guaifenesin, Fluticasone, Loratadine, a nasal spray, a Neti pot, and a saline flush to treat his congestion. Moffett discontinued several of the medications on his own because he did not believe they worked for him. Although Moffett may have disagreed with the type of treatment he received, mere disagreement with Nurse Peters' course of treatment does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Nurse Peters concluded Moffett did not need surgery based on his obstructive sleep apnea diagnosis and continued to adjust her plan of care to help facilitate restful sleep and decrease Moffett's nasal congestion symptoms. A "medical professional's treatment decisions will be accorded deference 'unless "no minimally competent professional would have so responded under those circumstances."'" *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008) (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). Plaintiff has not demonstrated that Nurse Peters' medical decisions were a substantial departure from accepted professional judgment. Accordingly, the court will grant Nurse Peters' motion for summary judgment.

Moffett also asserts that HSM Lutsey was deliberately indifferent to his serious medical needs when she failed to investigate his allegations that Nurse Peters denied him sinus surgery due to its cost. Lutsey did not treat Moffett; her involvement in this case was limited to responding to Moffett's letter concerning Nurse Peters' denial of surgery as the Health Services Manager.

Lutsey's response to Moffett's letter was based on Nurse Peters' medical opinion that Moffett did not require sinus surgery. An administrator is generally "entitled to rely on the judgment of medical professionals treating an inmate." *Rasho v. Elyea*, 856 F.3d 469, 479 (7th Cir. 2017). Moffett has not presented any evidence establishing that Lutsey had reason to doubt that Nurse Peters' medical decision was based on anything other than her medical judgment or that her decision was incorrect. Lutsey was entitled to rely on Nurse Peters' medical judgment, and no reasonable jury could conclude that Lutsey was deliberately indifferent, here. Therefore, the court grants Lutsey's motion for summary judgment.

## CONCLUSION

For these reasons, Plaintiff's motion to compel (Dkt. No. 36) is **DENIED**, Plaintiff's motion for an extension of time (Dkt. No. 46) is **GRANTED**, Defendant Peters' motion to strike (Dkt. No. 56) is **DENIED**, Defendants' motions for summary judgment (Dkt. Nos. 37 & 47) are **GRANTED**, and Plaintiff's motion for summary judgment (Dkt. No. 52) is **DENIED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 8th day of July, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
